IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 16, 2002

IN THE MATTER OF:  S.G.S.

**Appeal from the Circuit Court for Wilson County**
**No. 10952     Clara Byrd, Judge**

---

**No. M2001-00649-COA-R3-JV - Filed July 18, 2002**

---

The trial court terminated the parental rights of the biological father on the ground of abandonment, and granted the adoption petition of the stepfather.  The biological father argues on appeal that he did not abandon his child.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

F. Michie Gibson, Jr., Nashville, Tennessee, for the appellant, R.A.S.

Anthony E. Hagan, Lebanon, Tennessee, for the appellees, R.C.D and S.D.D.

**OPINION**

**I.**

S.G.S. was born on August 13, 1997.  Her mother, S., and her father, R.S., were married at the time, but separated.  On November 18, 1998, fifteen months after the birth of their daughter, they divorced, and S. was awarded custody and child support of $40 per week.  R.S. was granted visitation, but only in the presence of his mother.  S. subsequently re-married.  Her new husband, R.D., decided to adopt S.G.S., and on September 10, 1999, he and S. filed a petition for adoption.  The petition included a prayer for the termination of the parental rights of R.S. on the ground of abandonment.

R.S. was serving a three year sentence in prison when the petition was filed.  He obtained an attorney for the limited purpose of filing a motion to have the petition put off until he could be released.  The court subsequently appointed the same attorney to represent R.S. during the entire course of these proceedings.  The attorney filed an answer denying that R.S. had abandoned his child,

and a motion for visitation. The petitioners filed a motion to set the case for trial. The trial court denied the motion for visitation and the motion to put off the petition, and set a hearing for November 29, 2000.

R.S. was transported from prison for the purpose of appearing and testifying at the hearing. Other testifying witnesses were S., R.D. and the mother of R.S. At the conclusion of the hearing, the trial judge found that R.S. had abandoned his child by willfully failing to visit, and willfully failing to make reasonable payments towards her support. She filed orders on December 20, 2000 terminating the parental rights of R.S., and granting the adoption petition of S. and R.D. The respondent subsequently filed a motion for new trial, which was denied after another hearing. This appeal followed.

## II. ABANDONMENT

Parents have a fundamental right to the care, custody and control of their children. *In re Drinnon*, 776 S.W.2d 96 (Tenn. Ct. App. 1988); *Stanley v. Illinois*, 405 U.S. 645 (1972). But that right is not absolute. A court of law may sever the relationship between parent and child on appropriate grounds, if those grounds can be proved by clear and convincing evidence, *In re Swanson*, 2 S.W.3d 180 (Tenn. 1999), *Santosky v. Kramer*, 455 U.S. 645 (1972), and if it can also be proved that the termination is in the best interests of the child. *See* Tenn. Code. Ann. § 36-1-113.

Abandonment is one ground that justifies the termination of parental rights under our statutes. Tenn. Code. Ann. § 36-1-102(1)(A) describes several different situations that constitute abandonment for the purpose of terminating such rights, including

> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child.

Sections (D) and (E) of the same statute further explain the elements of abandonment:

> (D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;

(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;

R.S. did not visit his daughter between February 1999 and September 1, 1999 the date of his incarceration. He also did not make any payments towards the support of S.G.S. after February or March of 1999. His failure to act thus implicates both types of abandonment described in Tenn. Code Ann. § 36-1-102(1)(A)(iv). We must, however, look a bit deeper to determine if his dereliction was "willful" within the meaning of the statute. *See In Re Swanson*, 2 S.W.3d 180 (Tenn. 1999).

### A. FAILURE TO VISIT

The proof showed that R.S. and S. never lived together after S.G.S. was born, and that visitation between R.S. and S.G.S. was always sporadic. When S.G.S. was two weeks old, S. and R.S. agreed that they would meet at a restaurant, and that S. would bring the baby for R.S. to see. R.S. testified that after S. allowed him to hold the baby, he felt overwhelmed by the whole situation, and went out the back door of the restaurant carrying the baby. S.G.S. was returned to her mother after the police were called. After that, the presence of the mother of R.S. was required during all visitation between her son and S.G.S.

R.S. testified that he loved his daughter, and was desperate to maintain his relationship with her, testimony that was corroborated by his mother. The evidence does not indicate that he lacked affection for his child, but rather that he was consumed by other problems, including his drug addiction, his difficulties with the criminal justice system, his H.I.V. positive status, and his conflicted feelings about his relationship with S.

The evidence shows that as the relationship between R.D. and S. deepened, S. decided that it would be best to break off all relations with R.S. and his family. R.S. testified that in hopes of arranging visitation, he made seven or eight attempts to telephone S. after February of 1999, but she was never at home.

R.S. never attempted to enforce visitation through the courts, and he never wrote a letter to his former wife, or sent a card to his daughter. He stated that he was not more aggressive in his pursuit of visitation with S.G.S. because he thought it was not a good idea, and would likely get him into more trouble. The mother of R.S. testified that she also attempted to telephone S. numerous times after February of 1999, but was thwarted by S.'s use of Caller I.D. to avoid calls she did not want to answer.

Resistance to visitation on the part of S. somewhat undermines the argument that R.S. willfully failed to visit his child. It appears to us, however, that such a situation calls for a more energetic response on the part of the non-custodial parent, a response that was not forthcoming in

this case. Even if we questioned the trial court's finding of willful failure to visit, however, the evidence is clear and convincing that R.S. willfully failed to support S.G.S.

### B. FAILURE TO SUPPORT

There was no evidence that R.S. was incapable of earning a living. The proof showed that he worked somewhat sporadically, and that with the help of his mother he managed to pay his rent, and hire an attorney to defend him on criminal charges. He also managed to find the money to feed his drug habit, but he did not furnish meaningful support to S.G.S. Fortunately for the little girl, she did not have to rely on R.S., because her stepfather had taken on the responsibility of furnishing the necessary support.

S. testified that R.S. made nine payments of $40 each for the support of S.G.S. during 1997. After the divorce decree became final, R.S. made almost no effort to support his daughter, despite the child support order in the decree. He apparently made one contribution of $40 during Christmas, 1998, and he testified that he gave S. $40 or $50 in cash in March of 1999. By his own admission, therefore, he furnished no support to his child in the four months before his incarceration, and only token support before that. Under the circumstances, such an abdication of parental responsibility can only be called willful.

### III. BEST INTEREST

The trial court found that it was in the best interest of S.G.S. that the parental rights of R.S. be terminated, so that she could be adopted by R.D. The proof shows that R.D. stepped into the role of breadwinner and father soon after the birth of S.G.S., and that he continues to provide for both the material and emotional needs of the child. Since none of the parties disputes that R.D. is a fit person to exercise care and custody over S.G.S., we think there is clear and convincing evidence that it was in the best interest of S.G.S. to terminate the parental rights of her biological father, so that she could be adopted by the only father she has ever known.

### IV.

The order of the trial court is affirmed. Remand this cause to the Circuit Court of Wilson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.